IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1997 SESSION



**FILED**

**December 1, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01-C-01-9608-CC-00346 |
| | ) | |
| APPELLEE, | ) | Giles County |
| | ) | |
| v. | ) | James L. Weatherford, Judge |
| | ) | |
| RYAN MORAN, | ) | (Attempted First Degree Murder, |
| | ) | Especially Aggravated Kidnapping, |
| | ) | Especially Aggravated Robbery, |
| APPELLANT. | ) | and Assault) |


FOR THE APPELLANT:

Bobby W. Sands
Attorney at Law
P. O. Box 1660
Columbia, TN  38402-1660

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Georgia Blythe Felner
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

T. Michael Bottoms
District Attorney General
P. O. Box 459
Lawrenceburg, TN  38464-0459

Richard H. Dunavant
Assistant District Attorney General
P. O. Box 304
Pulaski, TN  38478-0304


OPINION FILED: _____


AFFIRMED


Joe B. Jones, Presiding Judge

# OPINION

The appellant, Ryan Moran (defendant), was convicted of attempted first degree murder, a Class A felony, especially aggravated kidnapping, a Class A felony, especially aggravated robbery, a Class A felony, and assault, a Class A misdemeanor. The defendant entered a no contest plea to attempted first degree murder and guilty pleas to the remaining charges. The trial court found the defendant was a standard offender and sentenced the defendant to the following Range I sentences: for attempted first degree murder, twenty-five (25) years in the Department of Correction, for especially aggravated kidnapping, twenty-five (25) years in the Department of Correction, for especially aggravated robbery, twenty-five (25) years in the Department of Correction, and for assault, eleven (11) months and twenty-nine (29) days. The trial court ordered that the sentences for attempted first degree murder, especially aggravated kidnapping, and especially aggravated robbery should be served consecutively. The sentence for assault is to be served concurrently with the other sentences. The effective sentence is confinement for seventy-five (75) years in the Department of Correction.

The defendant presents one issue for review. He contends the sentences imposed by the trial court were excessive because the trial court erred (a) in applying the enhancement factors which were used to increase the sentences within the range, (b) in applying the mitigating factor, and (c) in ordering the twenty-five year sentences be served consecutively for an effective sentence of seventy-five years. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, this court is of the opinion the judgment of the trial court should be affirmed.

The defendant does not challenge the sufficiency of the evidence. However, a recitation of the salient facts is necessary for an understanding of the issue presented for review.

The victim, Jimmy R. Taylor, took his new Jeep Grand Cherokee to a carwash in Giles County around lunchtime on April 5, 1995. Taylor, an electrical supply salesman, was in between appointments. After washing his vehicle and returning to his car, the defendant approached the victim, cocked a sawed-off shotgun, and placed it to the

2

victim's throat. The defendant told the victim "if [he] moved [the defendant would] blow [his] m----- f----' head off." The defendant told the victim, who was seated in the driver's seat, to move over to the passenger seat.

The defendant then drove the Jeep from the carwash and headed to Lawrenceburg on Highway 64. The defendant held the gun at the victim's side the entire time. The victim was instructed not to look scared and to look straight ahead. The victim said if he even glanced toward the defendant, the defendant would poke him with the gun.

During the ride the defendant asked the victim for his money. Taylor gave the defendant six dollars. When they approached Chicken Creek Road, the defendant told the victim he was going to release him. The defendant stopped the vehicle, and the victim reached for the door handle to exit the vehicle. The defendant said, "I didn't say now. I'll tell you when I'm going to let you go." The defendant then poked him with the gun in the ribs four times. The defendant turned the vehicle around, crossed an overpass, then stopped, backed up, and drove off the road. He stopped at an area called Richland Creek, which is below the overpass.

The victim thanked the defendant for letting him go and, as he turned to exit the vehicle, the defendant put the gun to the victim's head and fired. The victim said he remembered a loud ringing in his head, falling to the ground face down, and losing consciousness. The defendant eventually "totaled" the victim's vehicle.

When the victim regained consciousness, he discovered he could not move and the ringing persisted. Finally he was able to roll over. "I rolled over enough to -- in front of me I seen a pile of blood, tissue and hair. It was right beside of my head so I figured at that point the back of my head was kind of laying beside me." He tried to scream for help but realized the motorists on the overpass could not hear him. He placed his wallet in his shirt pocket so he could be identified if he lost consciousness again.

The victim saw houses, but they were too far away. He decided to crawl to the roadway above him. He crawled on his stomach. He did not know how far it was or how long it took, but said "it was a long ways that day." He stumbled onto the road. Two cars stopped. One of the motorists called for an ambulance while one sat and prayed with the victim. A third person wrapped the victim in a sheet until help arrived.

3

The victim's treating doctor noted that the victim was shot in a remote area and was fortunate to get himself to the road, stating "[o]therwise, I do not think he would have survived this event."

## I.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial

4

court are erroneous.

## II.

The defendant challenges the enhancement factors used by the trial court to enhance his sentence within the applicable range. The trial court found the following enhancement factors under Tenn. Code Ann. § 40-35-114:

> (5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
> (6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high;
> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

As for enhancement factor (1) regarding criminal convictions and criminal behavior, the trial court said it was not going to take the defendant's juvenile record into consideration.

The trial court said the above factors were used to determine the length of the sentences, but the court failed to specify which enhancement factors applied to which offenses. Thus, the statutory presumption of correctness afforded by Tenn. Code Ann. § 40-35-401(d) does not apply. This court will address each enhancement factor without a presumption of correctness.

## A.

The trial court properly used factor (5)[1] to enhance the defendant's sentence for attempted first degree murder within the range. This factor is not an element of attempt to

---

[1]Factor (5) states, "The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense." Tenn. Code Ann. § 40-35-114(5).

5

commit murder in the first degree. State v. Cedric E. Stampley, Shelby County No. 02-C-01-9409-CR-00208 (Tenn. Crim. App., Jackson, August 16, 1996), per. app. denied (Tenn. January 27, 1997). The phrase "extreme cruelty" is defined as "cruelty above that needed to effectuate the crime." State v. Lester Bennett, Sevier County No. 03-C-01-9403-CR-00104 (Tenn. Crim. App., Knoxville, December 8, 1994).

In this case the defendant held the sawed-off shotgun against the victim's rib cage the entire time the two men were in the vehicle. The victim testified he realized at the time, if the defendant fired the gun near the rib cage, he would likely die because of the gun's proximity to his major organs. "At that point . . . I tried to do everything he said." The defendant eventually pulled off the road near an overpass in a remote area and told the victim, "Consider yourself lucky. I'm going to let you go." The victim, relieved, responded to the defendant, "Thank you. You don't know how much I appreciate it." The victim opened the passenger door, placed one foot out and was moving his other leg to step out when the defendant placed the gun at the center of the back of his head and fired.

Taylor fell to the ground and lost consciousness. When he regained consciousness, he could not move. When he was finally able to roll over, he saw blood, tissue, and hair next to his head. The defendant left Taylor in the remote area shot and bleeding. He did not seek medical assistance for the victim. See State v. Stanley Dewayne Myers, Blount County No. 03-C-01-9409-CR-00344 (Tenn. Crim. App., Knoxville, April 13, 1995) (upholding use of factor (5) in second degree murder when defendant left victim shot at the situs of shooting and failed to get help.) Taylor tried to scream for help but realized the motorists on the overpass could not hear him. He crawled to the overpass to get help. His treating doctor said had Taylor not crawled for help he would not have survived the shooting.

We conclude the actions of the defendant constitute exceptional cruelty.

As for especially aggravated kidnapping, that offense occurs when the victim suffers serious bodily injury during the course of the kidnapping. Tenn. Code Ann. § 39-13-305(4). Exceptional cruelty is not inherent in the offense. State v. Antonio M. Byrd, Shelby County No. 02-C-01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996), per. app. denied (Tenn. September 22, 1997). In this case, the defendant told the victim

6

he would be set free. Obviously this would have given the victim a great sense of relief until he felt the gun at the back of his head. The defendant shot the victim and left him for dead in a remote area after the victim did everything the defendant asked. The trial court properly used factor (5) to enhance the sentence for especially aggravated kidnapping.

Especially aggravated robbery occurs when the robbery is accomplished with a deadly weapon and the victim receives serious bodily injury. Tenn. Code Ann. § 39-13-403. Exceptional cruelty is not necessarily inherent in the offense. State v. Kern, 909 S.W.2d 5, 7 (Tenn. Crim. App. 1993), per. app. denied (Tenn. 1994); State v. Antonio M. Byrd, Shelby County No. 02-C-01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996), per. app. denied (Tenn. September 22, 1997). The facts related above support the application of factor (5) to the crime of especially aggravated robbery.

## B.

The trial court properly applied factor (6)[2] when enhancing the defendant's sentence for attempted first degree murder. This is not an element of attempt to commit murder in the first degree. An accused can commit the offense of attempted murder without inflicting injury to the victim.

The victim testified that he still has pellet from the shotgun in his head. The pellets continue to put pressure on his spinal cord and his eardrum which causes his ears to ring. Several of his vertebras were destroyed and he will have to undergo an operation to place a steel plate in his neck. He can no longer turn his head. He experiences daily pain in his head and shoulders. The use of his right arm is limited. For a while, he had lost feeling in both arms below the elbows. Eventually he will need cosmetic surgery at the back of his neck. He testified it hurts to do simple things, such as shave and comb his hair. As a result of the shooting and the ensuing injury, the victim missed four months of work.

He told jurors, "I do not get in an automobile unless the door is locked. Anyone starts towards me while I'm in an automobile then I will tense up and it terrifies me."

---

[2]Factor (6) states, "The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great." Tenn. Code Ann. § 40-35-114(6).

The application of factor (6) was appropriate. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), per. app. denied (Tenn. 1996); State v. Cedric E. Stampley, Shelby County No. 02-C-01-9409-CR-00208 (Tenn. Crim. App., Jackson, August 16, 1996).

This court notes that enhancement factors cannot be elements of the offense charged. Thus the portion of factor (6) referring to "particularly great" "personal injuries" is inapplicable to a charge where "serious bodily injury" is an element of the offense. State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994) (the facts used to prove "serious bodily injury" are the same as those necessary to prove "particularly great injury"). In the present case, "serious bodily injury" was alleged as an element of especially aggravated kidnapping. Therefore, application of factor (6) as to injury was not appropriate for the aggravated kidnapping charge. State v. Bobby Ed Begley, Davidson County No. 01-C-01-9411-CR-00381 (Tenn. Crim. App., Nashville, January 11, 1996), per. app. denied (Tenn. July 1, 1996).

The indictment for especially aggravated kidnapping did not include as an element of the offense that "the amount of damage to property sustained by or taken from the victim was particularly great." During the kidnapping, the defendant obtained the victim's 1995 Jeep Grand Cherokee and later "totaled" the vehicle which was only a week old. The value of the vehicle was placed at $38,000. For this reason, application of factor (6) is appropriate to the especially aggravated kidnapping charge.

Since the indictment for especially aggravated robbery included reference to serious bodily injury and to the theft of the 1995 Jeep Grand Cherokee, application of factor (6) is not appropriate here. State v. Antonio M. Byrd, Shelby County No. 02-C-01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996), per. app. denied (Tenn. September 22, 1997); State v. Bobby Ed Begley, Davidson County No. 01-C-01-9411-CR-00381 (Tenn. Crim. App., Nashville, January 11, 1996), per. app. denied (Tenn. July 1, 1996).

8

## C.

The trial court properly applied enhancement factor (8)[3] to all three charges. The defendant argues this was error.[4]

The defendant's juvenile records entered into evidence indicate that on June 16, 1993, he was placed under court-supervised probation with Youth Services in Giles County because of charges of aggravated assault, carrying a dangerous weapon, and stalking. On October 20, 1993, while still on probation, he was found delinquent because of truancy from Giles County Alternative School and placed on supervised probation with the Department of Youth Development (DYD). On January 20, 1994, he was found by Judge Robert E. Lee to have violated the DYD probation after being suspended from the alternative school. On February 2, 1994, Judge Lee found the defendant guilty of truancy and violation of probation. The defendant was committed to the custody of DYD.

Judge Lee testified at sentencing that the defendant did not "want to abide by the rules I laid down for him, but he was just most defiant in any effort that we made in his behalf." The judge said the defendant always had trouble following the rules and would intentionally deviate.

As a juvenile, the defendant was placed on probation first with Giles County youth services and later with the Department of Youth Development. The testimony and records introduced at the sentencing hearing establish the defendant was unwilling to comply with the conditions of his probation. See State v. Crowe, 914 S.W.2d 933, 939 (Tenn. Crim. App. 1995), per. app. denied (Tenn. 1996); State v. Gregory L. Turner, Davidson County No. 01-C-01-9402-CR-00068 (Tenn. Crim. App., Nashville, November 15, 1995); State v. William B. Belser, Knox County No. 03-C-01-9502-CR-00056 (Tenn. Crim. App., Knoxville, September 18, 1996) (all three cases considering juvenile probation as support for

---

[3]Factor (8) states, "The defendant has a previous history of unwillingness to comply with the conditions of sentence involving release in the community." Tenn. Code Ann. 40-35-114(8).

[4]The defendant attempts to argue that the judge did not give this factor much weight based upon what the trial judge thought was a meager record of the defendant's prior criminal convictions. The criminal history really refers to factor (1). That issue is separate and apart from the evidence that the defendant violated his probation. The trial court said, "He did have a previous history from juvenile court of not complying with the rules of society."

enhancement factor (8)).

The application of this factor to all three charges was appropriate.

### D.

As for factor (9)[5], the state concedes that this factor is an element of the offense as to especially aggravated robbery only. This court agrees the factor was misapplied as to that charge.

The trial court properly applied factor (9) when enhancing the defendant's sentence for attempted first degree murder. The use of a firearm or dangerous weapon is not an element of attempt to commit murder in the first degree. This Court has held that this factor may be applied when the accused is convicted of attempt to commit murder. State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App.), per. app. denied (Tenn. 1994) (attempt to commit first degree murder and second degree murder); see State v. Butler, 900 S.W.2d 305, 312-13 (Tenn. Crim. App. 1994) (second degree murder); State v. Raines, 882 S.W.2d 376, 385 (Tenn. Crim. App.), per. app. denied (Tenn. 1994) (second degree murder); State v. Cedric E. Stampley, Shelby County No. 02-C-01-9409-CR-00208 (Tenn. Crim. App., Jackson, August 16, 1996), per. app. denied (Tenn., January 27, 1997) (attempted first degree murder).

The trial court also properly applied factor (9) to the offense of especially aggravated kidnapping. In this case, the indictment charging especially aggravated kidnapping alleged that the defendant committed especially aggravated kidnapping by causing the victim to suffer "serious bodily injury." Tenn. Code Ann. § 39-13-305 (a)(4). The indictment does not include the element that the kidnapping was accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-305(a)(1). Therefore, use of enhancement factor (9) was not error for the charge of especially aggravated kidnapping.

### E.

---

[5]Factor (9) states, "The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense." Tenn. Code Ann. § 40-35-114(9).

The court erred in applying factor (10)[6] to attempted first degree murder and especially aggravated robbery. This court has said that risk to human life is always great when a suspect commits attempted first degree murder. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), per. app. denied (Tenn. 1996).

Regarding especially aggravated robbery, this court also said, "there is necessarily a high risk to human life . . . whenever a deadly weapon is used." Nix, 922 S.W.2d at 903. Use of a deadly weapon is an element of especially aggravated robbery.

As for especially aggravated kidnapping, the court did not err in applying factor (10). This court upheld application of this factor to the charge of especially aggravated kidnapping in State v. Antonio M. Byrd, Shelby County No. 02-C-01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996), per. app. denied (Tenn. September 22, 1997).

## F.

The court erred in applying factor (16)[7] to attempted first degree murder and especially aggravated robbery. This court has said that the great potential for bodily injury always exists when a suspect commits attempted first degree murder. State v, Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), per. app. denied (Tenn. 1996).

As for especially aggravated robbery, this court also said, "there is necessarily . . . a great potential for bodily injury whenever a deadly weapon is used." Nix, 922 S.W.2d at 903.

Regarding especially aggravated kidnapping, this court has upheld the use of factor (16) for that charge. State v. Antonio M. Byrd, Shelby County No. 02-C-01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996), per. app. denied (Tenn. September 22, 1997).

## G.

---

[6]Factor (10) states, "The defendant had no hesitation about committing a crime when the risk to human life was high. Tenn Code Ann. § 40-35-114(10).

[7]Factor (16) states, "The crime was committed under circumstances under which the potential for bodily injury to a victim was great." Tenn. Code Ann. § 40-35-114(16).

The trial court should have applied factor (1)[8] to enhance the sentences for all three charges.

The defendant was arrested in August 1992 for aggravated assault and carrying a weapon with intent to go armed. He was arrested in May 1993 for stalking. In October 1993, he was found truant from the Giles County Alternative School. He was placed on probation to be supervised by the Department of Youth Development. In January 1994 he was suspended from the alternative school and was found to have violated his probation.

When he was sentenced in this case, the defendant also had pending charges for aggravated assault and felony escape.

The defendant stated in the presentence report that he uses marijuana when not incarcerated. The possession of marijuana is illegal. He also admits to drinking alcohol "socially." At the time of sentencing he was 19 years old; his consumption of alcohol was illegal.

The defendant's employment history is sporadic. One employer stated in the presentence report the defendant was fired from his job because he was suspected of stealing from other employees. He had also tested positive for drugs while working.

This is certainly evidence of criminal behavior warranting the use of factor (1).

Thus, this court determines the following enhancing factors are applicable:

| Enhancement Factor | Attempted First Degree Murder | Especially Aggravated Kidnapping | Especially Aggravated Robbery |
|---|---|---|---|
| (1) | yes | yes | yes |
| (5) | yes | yes | yes |
| (6) | yes | yes | no |
| (8) | yes | yes | yes |
| (9) | yes | yes | no |
| (10) | no | yes | no |
| (16) | no | yes | no |

---

[8]Factor (1) states, "The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range."

## III.

The defendant argues the trial court failed to consider his youth and lack of substantial judgment as a mitigating factor. Tenn. Code Ann. § 40-35-113(6). The trial judge never directly stated in the record that he found no mitigating factors. He did discuss that the evidence showed the defendant was of above average intelligence and that he could have pursued any profession he wanted. This evidence would negate the implementation of factor (6).

There were no mitigating factors. This issue is without merit.

## IV.

As a Standard Range I offender, the range for Class A felonies is fifteen (15) to twenty-five (25) years. In the defendant's case there were no mitigating factors, but there were several enhancement factors for each charge. Tennessee Code Annotated § 40-35-210 states in a situation with no mitigating factors and some enhancement factors, the sentencing judge may set the sentence above the minimum in the range but must set the sentence within the range. The trial court sentenced the defendant to twenty-five (25) years on each count, which was the maximum within the range. Given the presence and weight of the enhancement factors, this was not error.

The issue is without merit.

## V.

## A.

The trial court ordered the sentences for attempted first degree murder, especially aggravated kidnapping, and especially aggravated robbery are to be served consecutively.

13

The sentence for assault will run concurrently with the other sentences. The effective sentence is confinement for seventy-five (75) years in the Department of Correction.

The defendant argues this was error because the trial court did not make the express finding that such a term is necessary for the protection of the public from the defendant's further criminal acts. Based upon the court's statements, the court only found one of four factors required to support consecutive sentencing. The defendant maintains the court must find (a) the defendant's behavior indicates little or no regard for human life and he did not hesitate to commit a crime when risk to human life is high; (b) the circumstances surrounding the offense are aggravated; (c) extended confinement is necessary to protect society from the defendant's unwillingness to "lead a productive life and [his] resort to criminal activity in furtherance of [his] anti-social lifestyle;" and (d) the aggregate length of the consecutive sentences reasonably relates to the offenses of which the defendant stands convicted.

The defendant maintains the record fails to show any aggravated circumstances which are not otherwise inherent in the criminal acts committed. Also, the record fails to show that confinement is necessary for the protection of society from the defendant's unwillingness to lead a productive life. The defendant is young and lacks a criminal record; protection of society is not needed. Further, the defendant argues he can rehabilitate himself.

**B.**

The trial court stated at sentencing:

> If I give this man -- if I cause these sentences in the felony cases to run consecutively, one after the other, and I give him the maximum sentence in each one of those, that would be a total of seventy five years which sounds really bad. If he serves that and the law stays the same and he serves that in thirty percent, we're talking about twenty-two and a half year that he could serve that.
>
> Now this type of conduct compared to what it was a few years ago or what it might be in the future is a very light sentence for this type of thing and I feel like under the circumstances that I should run these sentences consecutively. I think that it fits this.

The court said Tenn. Code Ann. § 40-35-115(b)(4), which states that the defendant is a

14

serious offender whose behavior indicates little or no regard for human life and has no hesitation about committing the crime in which the risk to human life is high, "fits like a glove in this particular case."

## C.

An accused qualifies as a dangerous offender when his "behavior indicates little or no regard for human life, and [he has] no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b); see Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). While the defendant qualifies as a dangerous offender, this fact, standing alone, will not justify consecutive sentencing. State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995); see State v. Taylor, 739 S.W.2d 227 (Tenn. 1987); Gray, 538 S.W.2d at 393. As the supreme court said in Wilkerson:

> As previously stated in this opinion, the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

905 S.W.2d at 939.

The nature of the defendant's treatment of the victim, constantly threatening him with a gun, telling the victim he would be set free, shooting the victim in the back of the head and then leaving the victim to die, clearly establishes the defendant's callousness toward the life of the victim.

This court is of the opinion consecutive sentences should be imposed to prevent the defendant from harming another human being as he did in this case. Moreover, the lengths

15

of the sentences imposed are commensurate with the crimes the defendant committed. The record indicates the defendant is not amenable to rehabilitation.

16

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
WILLIAM M. BARKER, JUDGE


_____
THOMAS T. WOODALL, JUDGE