**STATE of Tennessee, Appellee,**

v.

**Jeffery Lynn CROWE, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

July 25, 1995.

Permission to Appeal Denied by Supreme Court Jan. 8, 1996.

Jeffrey Kelly, Assistant Public Defender, Johnson City, for Appellant.

Charles W. Burson, Attorney General & Reporter, Merrilyn Feirman, Assistant Attorney General, Criminal Justice Division, Nashville, David E. Crockett, District Attorney General, Joe C. Crumley, Jr., Assistant District Attorney General, Jonesborough, for Appellee.

## OPINION

WHITE, Judge.

Appellant, Jeffery Lynn Crowe, appeals as of right from his conviction in the Washington County Criminal Court for aggravated assault. As a range two offender, he was sentenced to serve ten years and fined $2,500. The sentence was imposed consecutive to two year and five year sentences for burglary. Appellant was on probation for the first burglary conviction when he pled guilty to a second burglary charge and was convicted of aggravated assault. Only the aggravated assault conviction and sentence is at issue in this appeal.

Appellant raises three issues:

1. whether the trial court erred by instructing the jury to consider each of the three alternative mental states listed in the aggravated assault statutes when the indictment gave notice of only one;

2. whether the evidence in the record is sufficient to prove beyond a reasonable doubt that appellant intentionally caused the victim serious bodily harm; and

3. whether the trial court improperly sentenced appellant to the maximum sentence allowable in the range.

We affirm appellant's conviction. While we disagree with the application of Tennessee Code Annotated Section 40–35–114(6) to the offense of aggravated assault in view of a recent Tennessee Supreme Court decision, we uphold the sentence.

The incident leading to appellant's conviction for aggravated assault occurred at the Johnson City Mall. A Russell Security guard, Beverly Honeycutt, whose duties were to protect against property damage and to prevent disturbances within the mall, encountered Crowe, in the Food Court where he was sitting with a friend. Since Crowe was not a Food Court customer, Honeycutt asked him to leave the area. Shortly afterward, another Russell Security Guard, Ronnie Mil-

ler, noticed appellant and three other individuals standing in a hallway in the lower level of the mall. Since the group was blocking the entrance to the restrooms, Miller asked them to move.

Crowe immediately became belligerent, swearing at the security guard and accusing him of harassing Crowe for Honeycutt. Crowe pushed Miller, and when Miller grabbed him by the arm, he began shouting "rape, rape ... rape...." Honeycutt arrived on the scene after receiving a radio call. She and Miller managed to bring the struggling youth into the security office. Crowe continued to swear at Miller threatening that he would "get" him. Once in the office, Crowe sat down on the only chair. The security guards informed him that he would be barred from the mall, and Honeycutt, who was standing behind the desk, began to fill out the appropriate form. Crowe then said that he would sue Miller for harassment and Miller responded by saying that he could press charges for assault.

Crowe jumped out of his chair and yelled, "I'll show you assault." He grabbed the night stick that Miller carried on his belt. A general melee ensued in the small office. At one point, Crowe kicked Miller in the chest with both feet and sent him back against the wall. At this point, another security guard, Randy Stockton, entered. Crowe was on the floor lying on his back with the night stick in his hand. Miller and Honeycutt were both grabbing at the stick while Crowe was kicking and swearing. As Stockton entered, Crowe kicked Honeycutt forcibly in the knee, throwing her back into the wall. Finally, Stockton got the night stick and threw it under the desk. Then while Honeycutt and Stockton held Crowe down, Miller handcuffed him.

Honeycutt, who at first did not believe she was seriously injured, completed the form to bar Crowe from the mall. The security guards escorted Crowe off the premises. Within the hour, Honeycutt's knee began to swell and she was unable to walk. She went to the emergency room and ultimately had surgery on the knee. At the time of trial she reported that she was still having great physical difficulties as a result of the injury.

■ In his first issue, appellant contends that the trial court erred by instructing the jury that the elements of aggravated assault are that a defendant has "intentionally, knowingly, or recklessly caused serious bodily injury" to the victim. Although he concedes that these three mental states are listed in Tennessee Code Annotated Section 39–13–101 and incorporated into Section 39–13–102, appellant argues that the instruction was improper in his case because the indictment charged only that he "did unlawfully and knowingly assault Beverly Honeycutt, and did cause serious bodily injury...." Since he was not given notice that the jury would be considering "reckless" as well as "knowing" behavior, appellant contends that he was hampered in the preparation of his defense and denied due process.

The state relies upon the unpublished case of *State v. Albert Slack,* No. 62, 1991 WL 231111 (Tenn., Knoxville, Nov. 12, 1991) (not for publication). *Slack,* however, concerns an offense committed in 1988, a year prior to the adoption of the new criminal code. The resolution of this issue is much simpler under the new law than it was when *Slack* was decided.

■ Two statutes adopted in 1989 clarify the culpable mental states required for most offenses under Tennessee law. Section 39–11–302 defines the mental states as

(a) "Intentional" refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

(b) "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when

the person is aware that the conduct is reasonably certain to cause the result.

(c) "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.[1]

Tenn.Code Ann. § 39–11–302 (1991 Repl.)

The statutory scheme creates a hierarchy, and, while each of the four mental elements are unique, the lesser levels of culpability are included within the greater. Sent. Comm'n Comments, Tenn.Code Ann. § 39–11–301 (1991 Repl.). Accordingly,

A person commits an offense who acts intentionally, knowingly, recklessly or with criminal negligence, as the definition of the offense requires, with respect to each element of the offense.

(2) When the law provides that criminal negligence suffices to establish an element of an offense, that element is also established if a person acts intentionally, knowingly or recklessly. *When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly.* When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally.

1. The statute also defines criminal negligence. However, since criminal negligence is not one of the mental states applicable to assault, we have omitted that section of the statute.

2. The converse, however, is not true. A "reckless" act is not necessarily done "knowingly."

3. Since appellant has not raised the issue, we express no opinion on whether it is proper to instruct on "intentional" when a defendant is indicted for "knowingly" committing an assault.

Tenn.Code Ann. § 39–11–301(a) (1991 Repl.) (emphasis added).

■ Therefore, in the hierarchy established by the legislature, "recklessness" is a lesser level of mental state that is embraced by both "intentional" and "knowing." The state cannot prove that an offense was committed "knowingly" without proving that it was committed "recklessly."[2] Whenever the state charges that a crime was committed knowingly, the defendant is on notice that "recklessness" is contained within the statutory definition. Since the indictment charged appellant with a "knowing" assault, a jury instruction containing the mental element of "reckless" is certainly not erroneous.[3]

■ Moreover, the element of recklessness was addressed a number of times during the trial. From the state's closing argument, it is apparent that "recklessness" was discussed as early as voir dire.[4] Even though the prosecutor spoke at length on the mental element of recklessness during closing argument, defense counsel did not object.[5] A party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error is not entitled to relief. Tenn.R.App.P. 36(a).

The trial court did not err by instructing the jury that to find appellant guilty of aggravated assault, the State must have proven beyond a reasonable doubt that

(1) appellant caused serious bodily injury to the alleged victim, and

(2) appellant acted intentionally, knowingly, or recklessly.

4. If this statement was inaccurate, defense counsel expressed no objection.

5. Nor could we find in the record any contemporaneous objection to the jury instruction. Defense counsel made an objection to the prosecutor's reading of the statutory definition of recklessness during closing arguments. However, he did not complain about the inclusion of the definition of recklessness. The objection was to a reference to "a person" rather than to "the accused" in the last sentence of the definition.

The instruction correctly states the elements of the offense as defined in Sections 39-13-101 and 102. "Recklessly" is a lesser level of the mental element "knowingly," and, if the state proved that appellant acted knowingly, the state also would have proved that he acted recklessly. Both the statutory definition of the offense and the hierarchy of mental states established by the statutory scheme placed appellant on notice of the elements which the state would attempt to prove at trial.

Next, appellant argues that the evidence in the record is insufficient to prove that he intentionally harmed Honeycutt. We note at the outset that the state was not required to prove that appellant acted *intentionally* although the record contains proof from which the jury could have concluded that he did. The mental elements of assault are stated in the alternative. Proof that appellant acted knowingly or recklessly would satisfy the mens rea requirement.

■ When the sufficiency of the evidence is challenged the standard for review by an appellate court is, whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63, 67 (Tenn.1985); Tenn.R.App.P. 13(e).

■ In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, 859 (1956); *Farmer v. State,* 574 S.W.2d 49, 51 (Tenn.Crim.App.), *cert. denied,* (Tenn.1978). Appellant was tried and convicted by a jury. A guilty verdict from the jury, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405,

410 (Tenn.1983); *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d at 836.

■ Testimony presented at trial indicates that appellant blamed Honeycutt for his hallway encounter with Miller. He was angry at her for ordering him to leave the Food Court. When he kicked Honeycutt she was in front of him where he could see her plainly. Stockton testified that appellant looked straight at Honeycutt when he kicked her. This proof is more than sufficient for the jury to conclude that appellant acted intentionally, the mental state highest in the statutory hierarchy. Contrary to appellant's argument, the state did not have to demonstrate that appellant intended to cause serious bodily injury to the victim. If the jury could conclude beyond a reasonable doubt that appellant kicked her intentionally, that is, he acted "intentionally with respect to the nature of the conduct," the mens rea requirement of aggravated assault is satisfied. Tenn.Code Ann. § 39-11-302(a) (1991 Repl.). If the state proved intentional conduct beyond a reasonable doubt, the state also proved knowing and reckless conduct. Tenn. Code Ann. § 39-11-301(a)(1) (1991 Repl.).

We, of course, do not know whether the jury concluded that appellant acted intentionally. They may have found that he acted recklessly by kicking violently and randomly in a situation where he was almost certain to strike someone. It doesn't matter. Evidence in the record supports either conclusion and is sufficient to prove beyond a reasonable doubt the elements of aggravated assault.

Finally, appellant complains that the trial court made a number of errors in sentencing. We conclude that two of his contentions have merit.

■ When there is a challenge to the length, range or manner of service of a sen-

tence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d) (1990 Repl.). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The Sentencing Commission comments provide that the burden is on defendant to show the impropriety of the sentence.

■ Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his or her own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103 & –210 (1990 Repl. & 1994 Supp.); *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim.App.1987).

In this case, the record created by the trial judge is exemplary. It is clear that the court gave careful thought to the sentence imposed and meticulously considered each and every sentencing factor and principle. We, therefore, review the record with a presumption that the sentence imposed by the trial court is correct.

■ The evidence presented at the sentencing hearing included a presentence report containing a written statement from the victim, appellant's records from Lakeshore Mental Health Institute, appellant's past criminal record, the state's notice to seek enhanced punishment, and appellant's complete social history. Appellant testified in his own behalf, and the court heard arguments of counsel.

First, the trial court determined the appropriate sentencing range. Appellant's prior record consisted of several juvenile offenses, two felony convictions for burglary, and one misdemeanor conviction for shoplifting. Given the two adult convictions for burglary, the trial court correctly sentenced appellant as a range two, multiple offender. Tenn.Code Ann. § 40–35–106(a)(1) (1990 Repl.).

Next, the court considered the enhancement and mitigating factors listed in Tennessee Code Annotated Sections 40–35–113 and –114. The trial court recognized that appellant, as a juvenile, experienced a good deal of trouble with the law. However, the judge noted that, after using the two felonies to enhance the range, the only remaining adult conviction was for a misdemeanor offense. Therefore, the court concluded that enhancement factor (1) was entitled to little weight.[6]

The trial judge found and placed great weight on enhancement factor (8), that the defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community." Tenn.Code Ann. § 40–35–114(8) (1994 Supp.). The record shows that appellant was placed on probation as a juvenile and that he failed to complete it successfully. As an adult, he attended boot camp and then was released on probation. Once again, he failed to successfully complete his probationary period. We agree that the use of enhancement factors (1) and (8) are fully supported by the record.

■ However, the trial court also found that enhancement factor (6) was applicable. Factor (6) may be used when "[t]he personal injuries inflicted upon … the victim [were] particularly great." Tenn.Code Ann. § 40–35–114(6) (1994 Supp.). In a recent case decided after this sentencing hearing, our Supreme Court resolved the issue of whether factor (6) is an essential element of aggravated assault when the indictment charges seri-

---

**6.** Factor (1) is applicable if defendant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn.Code Ann. § 40–35–114(1) (1994 Supp.).

ous bodily injury. *State v. Jones*, 883 S.W.2d 597 (Tenn.1994). After a thorough analysis of Tennessee law and comparable statutes in other states, the *Jones* court concluded that since "serious bodily injury" includes "a substantial risk of death," "protracted unconsciousness," "extreme physical pain," "protracted or obvious disfigurement," and "protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty" as defined in Tennessee Code Annotated Sections 39–13–102 and 39–11–106(a)(2) & (33), factor (6) is always an element of aggravated assault causing serious bodily injury and cannot be used to enhance a sentence for that offense. *State v. Jones*, 883 S.W.2d at 602. Therefore, enhancement factor (6) may not be used to enhance appellant's sentence.

The trial court found no mitigating factors. Our review of the record, however, has disclosed one potential mitigating factor. Jeff Crowe's social history indicates that he has had a stormy and troubled upbringing. An adopted child, his parents separated and eventually divorced during his early teen years. Before the age of eighteen, Crowe was twice admitted to mental institutions for treatment for substance abuse and suicidal tendencies. His medical records indicate that, although he exhibited no delusional thinking and was appropriately grounded in reality, he was impulsive, unable to delay emotional responses, and experienced strong feelings of aggression and hostility especially toward male authority figures. At the time of the offense, Jeff Crowe was twenty years old. Nonetheless, the trial judge concluded that "[t]here's no indication that he's lacking in judgment." We defer to that ruling made by a trial judge who was in a better position than we are to assess sentencing factors and whose judgment is entitled to a presumption of correctness.

Moreover, upon additional review we find that three other enhancement factors [7] are supported by the proof. Specifically, the offense involved more than one victim, appellant possessed a weapon, and appellant was on probation when the offense was committed. Tenn.Code Ann. § 40–35–114(3), (9), (13)(C) (1994 Supp.).

The trial judge carefully considered and correctly applied the sentencing principles relevant to alternative sentencing. His conclusion that confinement in this instance is necessary to protect society and to avoid depreciating the seriousness of the offense is supported by the record. Jeffery Crowe's unbridled hostility and impulsive aggressive acts are completely unacceptable behavior and present a threat to anyone who may cross this young man's path. Appellant must demonstrate that he is willing to rehabilitate himself, he must acknowledge his problems, and he must accept responsibility for his actions before he can be released into society.

Accordingly, appellant's conviction and sentence for aggravated assault are affirmed.

SCOTT, P.J., and HAYES, J., concur.

---

7. The state, in its brief, refers to four enhancement factors but discusses only the three found in the record, factors (1), (6), and (8). The state may additionally be referring to factor (13)(C) regarding sentencing one who commits a felony while on probation for a prior felony. Factor (13) is quite similar to factor (8). From his discussion of the factors, the trial judge apparently decided that it was sufficient to give great weight to factor (8) rather than using both factors (8) and (13). We defer to his judgment.