**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0599n.06

No. 13-6339

**FILED**
Aug 05, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TERRENCE BELL | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE:** **MOORE and ROGERS, Circuit Judges; and NIXON, District Judge.**[*]

**JOHN T. NIXON, District Judge.** Terrence Bell pled guilty to being a felon in possession of a firearm and to possessing cocaine with intent to distribute. The government argued Bell should be sentenced as an armed career criminal based on three previous convictions: one aggravated robbery and two aggravated assaults in Tennessee. Bell argued that one of his convictions for aggravated assault under Tennessee law did not qualify as a violent felony. The district court agreed with the government and sentenced Bell as an armed career criminal to 180 months in prison. For the following reasons, we **AFFIRM** the district court's sentence.

---

[*] The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

**BACKGROUND**

On December 14, 2012, a federal Grand Jury indicted Bell on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On March 13, 2013, Bell entered a guilty plea to both counts without a written plea agreement.

On May 14, 2013, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which deemed Bell an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on having three previous convictions for violent felonies. The three convictions were one aggravated robbery and two aggravated assaults. Based on the PSR, Bell's advisory guideline range for both counts was 188 to 235 months; however, the firearm charge also carried a statutory minimum of 180 months (15 years) based on Bell's designation as an armed career criminal under the ACCA. *See* 18 U.S.C. 924(e)(1) (2012).

On July 30, 2013, Bell filed a Position on the PSR, challenging only the designation of one of his convictions for aggravated assault as a violent felony under the ACCA. In particular, one conviction was predicated on violation of Tenn. Code Ann. § 39-13-102(c), which Bell contended encompasses both simple assaults and crimes committed recklessly and is therefore outside the scope of the ACCA's definition of violent felony. On August 4, 2013, the government filed its own Position on the PSR, arguing Bell's aggravated assault conviction qualified as a violent felony under the ACCA. Specifically, the government submitted that § 39-13-102(c) does not encompass recklessness and further that any violation of § 39-13-102(c) presents sufficient risk of physical injury to qualify as a violent felony.

On October 7, 2013, the district court conducted a sentencing hearing with oral argument from Bell and the government. Both essentially reiterated the arguments in their respective Positions. Ultimately, the district court rejected Bell's objections, concluding the statute could not be violated by merely reckless conduct and that the risk of violence created by a violation of § 39-13-102(c) presented sufficient risk of physical injury to qualify as a violent felony given that § 39-13-102(c) requires the crime to be committed in violation of a restraining order. The district court then sentenced Bell to 180 months in prison. This appeal followed.

## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's determination of law that a defendant's prior conviction is a violent felony under the ACCA. *United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014).

### II. Analysis

At the time of Bell's conviction in 2006, Tenn. Code Ann. § 39-13-102(c)[1] provided

> A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

"Assault" was then further defined as

> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

---

[1] The current version of the statute is essentially identical to the 2006 version. *See* Tenn. Code Ann. § 39-13-102(c) (2014).

   (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a) (2006). For purposes of both of these sections, "bodily injury" was defined as "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2) (2006). Further, "in determining the meaning or the scope of [aggravated assault], we are bound by the Tennessee Supreme Court's interpretation, including its guidance on the elements of the crime." *Mitchell*, 743 F.3d at 1059.

   Under the ACCA, a person convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g), with three previous convictions under § 922(g)(1) for violent felonies, shall serve a minimum fifteen-year sentence. 18 U.S.C. § 924(e)(1) (2012). "Violent felony" is defined as

   any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B). Accordingly, there are three ways in which a crime may qualify as a violent felony: (1) as an enumerated offense (burglary, arson, extortion, use of explosives); (2) under the "use of physical force" clause, 18 U.S.C. § 924(e)(2)(B)(i); or (3) under the "otherwise," or residual, clause, 18 U.S.C. § 924(e)(2)(B)(ii). *See United States v. McMurray*, 653 F.3d 367, 373 (6th Cir. 2011). Additionally, this Court analyzes a "violent felony" under the ACCA in the same way as a "crime of violence" under § 4B1.2(a) of the United States Sentencing Guidelines[2]

---

[2] Under this section of the guidelines, a "crime of violence" is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion,

and thus relies equally on cases interpreting either term. *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).

We apply a "categorical" approach in determining the nature of a prior conviction, meaning that the Court "look[s] at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *United States v. Johnson*, 675 F.3d 1013, 1016 (6th Cir. 2012) (quoting *United States v. Ford*, 560 F.3d 420, 421–22 (6th Cir. 2009)). "Courts use 'a variant of this method—labeled (not very inventively) the "modified categorical approach"—when a prior conviction is for violating a so-called "divisible statute,"' which 'sets out one or more elements of the offense in the alternative.'" *Denson*, 728 F.3d at 608 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013)). This modified categorical approach is applicable only where the statute at issue "'could be violated in a way that would constitute a [violent felony] and in a way that would not.'" *Id.* (quoting *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012)).

As aggravated assault is not an enumerated offense, it can be deemed a "violent felony" only under either the "use of force" clause or the residual clause. However, the government has conceded that aggravated assault, as defined in the Tennessee Code, does not categorically meet the "use of force" clause requirements. Accordingly, we analyze the crime at issue only under the residual clause. Additionally, because we determine that violation of Tenn. Code Ann. § 39-13-102(c) is categorically a violent felony under the residual clause, we need not apply the modified categorical approach.

---

involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S. Sentencing Guidelines Manual § 4B1.2(a) (2014).

### a. The "Residual Clause" of the ACCA

To qualify as a violent felony under the residual clause of the ACCA, a crime must "involve[] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). While this provision's "language is broad, the residual clause is not intended as a catch-all provision and covers only crimes similar to the four enumerated offenses that textually precede it." *Denson*, 728 F.3d at 609 (internal quotation marks omitted). As this Court noted in *United States v. Covington*, 738 F.3d 759, 765 (6th Cir. 2014), the Supreme Court has decided two recent cases under the residual clause, each using a different analysis. First, in *Begay v. United States*, 553 U.S. 137 (2008), the Court focused on "whether the statute insists on 'purposeful, violent, and aggressive conduct,'" thus making it similar to the enumerated offenses. *Covington*, 738 F.3d at 765 (quoting *Begay*, 553 U.S. at 145). However, in *Sykes v. United States*, 131 S. Ct. 2267 (2011), the Court explained that "'levels of risk divide crimes that qualify [as violent felonies] from those that do not,'" such that the appropriate analysis "is whether 'the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.'" *Covington*, 738 F.3d at 765 (alteration in original) (quoting *Sykes*, 131 S. Ct. at 2273, 2275 (internal quotation marks omitted)).

This Court has not conclusively determined the effect of *Sykes* on *Begay*'s "purposeful, violent, and aggressive" test. *See Mitchell*, 743 F.3d at 1062 (applying the *Begay* test but noting "strict adherence to the 'purposeful violent, and aggressive' rubric is not definitively required, and . . . its future is in question"). However, "[t]his Court . . . has reasoned that the two analyses are more supplementary than distinct." *Covington*, 738 F.3d at 765 (citing *Denson*, 728 F.3d at 610 ("As the language in *Sykes* limiting *Begay* is not mandatory, we have continued to apply the two-part test in some residual-clause cases, and have chosen to exclude the *Begay* question in

6

others.")); *see also Sykes*, 131 S. Ct. at 2289 n.1 (Kagan, J., dissenting) (interpreting the majority's opinion as not limiting the "purposeful, aggressive, and violent" standard to strict liability, negligence, and recklessness crimes, as such "would . . . eliminate the test's focus on 'violence' and 'aggression.' And it would collide with *Chambers v. United States*, 555 U.S. 122 (2009)—a decision the majority cites approvingly—which applied the test to an intentional crime"). *But see United States v. Evans*, 699 F.3d 858, 865 (6th Cir. 2012) ("In *Sykes* . . . the Supreme Court limited the application of *Begay*'s 'purposeful, violent, and aggressive' standard . . . to crimes premised on strict liability, negligence, or recklessness.")

Accordingly, while the "purposeful, aggressive, and violent" standard may still be applied by this Court, the first question to be addressed under the residual clause is whether the violation of the underlying statute presents a level of risk of physical harm that is similar to one of the enumerated offenses.

### i. Level of Risk of Physical Injury

Three elements are necessary for a conviction under the crime of aggravated assault under Tenn. Code Ann. § 39-13-102(c): (1) the violator must be subject to some form of restraining order,[3] (2) the restraining order must prohibit the violator from "in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault" against a specific person or persons, and (3) the violator must "intentionally or knowingly attempt[] to cause or cause[] bodily injury or commit[] or attempt[] to commit an assault against" the same person or persons named in the restraining order. Accordingly, the underlying action taken by the defendant must be either an assault against or bodily injury to the

---

[3] The exact language of the statute provides the violator must "hav[e] been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction," without specific reference to a particular type of restraining order. Tenn. Code Ann. § 39-13-102(c).

victim, or attempt, in combination with the preconditions set forth by the first two elements. Therefore, based on the categorical approach we are required to utilize, we analyze *both* whether causing or attempting to cause bodily injury, *and* whether attempting to or committing an assault under these circumstances, present a level of risk similar to an enumerated crime under the ACCA.

As previously explained, the term "bodily injury" is defined by statute in Tennessee to mean "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). Additionally, the "assault" element of § 39-13-102(c) requires only that the person commit or attempt to commit an "assault" and does not require any particular form of assault to give rise to a violation. "Assault" under § 39-13-101(a) encompasses three different forms of assault: (1) causing bodily injury, (2) "causing another to reasonably fear imminent bodily injury," or (3) "physical contact with another [that] a reasonable person would regard . . . as extremely offensive or provocative."

The government has analogized to the crime of generic burglary under the ACCA in arguing that violation of § 39-13-102(c) presents a sufficient level of risk to qualify as a violent felony. As explained by the Supreme Court in *James v. United States*, 550 U.S. 192, 203 (2007), "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the *possibility* of a face-to-face confrontation between the burglar and a third party . . . who comes to investigate." We find this explanation of the level of risk present in an enumerated crime—burglary—demonstrates why the crime at issue in this case—aggravated assault—presents the requisite level of risk of physical injury.

8

There is little question that the commission of an aggravated assault under § 39-13-102(c) by way of causing "bodily injury" to the victim presents a level of risk equivalent to an enumerated crime in the ACCA. As this Court has previously noted, where a crime requires the perpetrator to purposefully cause or attempt to cause serious physical injury, such crime presents a serious potential risk of physical injury to another, "[b]y its plain terms." *United States v. Perry*, 703 F.3d 906, 910 (6th Cir. 2013); *see also Mitchell*, 743 F.3d at 1060–61 (explaining that because the robbery crime at issue "require[d] violence actually [be] dispensed, or put[] the victim in fear from violence offered or impending," such crime clearly presented the requisite level of risk under the ACCA). Further, as opposed to the mere *possibility* of a confrontation in generic burglary that *could* lead to physical injury, causing bodily injury to another almost certainly requires a confrontation and without question requires physical injury.

With regard to the potential for violation of § 39-13-102(c) based on commission of assault, the statutory definition of "assault" in Tennessee reaches a wider range of activities that we must consider. As the first form of assault is causing bodily injury, *see* Tenn. Code Ann. § 39-13-101(a)(1), it is covered by our above analysis.

As to the second type of assault, "causing another to reasonably fear imminent bodily injury," *id.* § 39-13-101(a)(2), this is largely analogous to our decision in *Mitchell*. The *Mitchell* Court dealt with determining whether robbery under Tennessee law constituted a violent felony, particularly where that crime could be accomplished by "'putting the [victim] in fear.'" 743 F.3d at 1058 (quoting Tenn. Code Ann. § 39-13-401). Relying on decisions from the Tennessee Supreme Court, *Mitchell* explained that such "fear" must be "'a fear of bodily injury and of present personal peril from violence offered or impending.'" *Id.* at 1059 (quoting *State v. Taylor*, 771 S.W.2d 387, 398 (Tenn. 1989)). Because of the nature of the fear required to

constitute robbery by fear, the Court held that it was sufficient to find the crime a violent felony. *Id.* at 1060. While it is true the discussion of fear focused on the "use of force" clause of the ACCA, the Court also found the crime of robbery by fear to be a violent felony under the residual clause, *id.* at 1060–63, and that reasoning is relevant to our analysis of aggravated assault under the residual clause. First, the "fear" at issue under the assault statute similarly requires, based on the statutory language, that the victim fear "bodily injury" that is "imminent." Tenn. Code Ann. § 39-13-101(a)(2). Second, like robbery by fear in *Mitchell* but unlike generic burglary, assault by fear essentially requires a confrontation between victim and perpetrator, thus increasing the risk of physical injury. *See Mitchell*, 743 F.3d at 1062. Additionally, as we explain below, the additional elements of § 39-13-102(c) require that the confrontation occur after a court has already restrained the perpetrator from engaging in this conduct with the victim, which would seem to only heighten the likelihood of violent confrontation or escalation given the circumstances that led to the restraining order in the first place. The reasoning of *Mitchell* thus extends to the present case, and violation of § 39-13-102(c) by commission of assault by fear presents the requisite level of risk of physical injury to qualify as a violent felony.

The statute's third form of assault, committed by "caus[ing] physical contact with another [that] a reasonable person would regard . . . as extremely offensive or provocative," Tenn. Code Ann. § 39-13-101(a)(3), presents the most difficulty. The Tennessee Supreme Court has defined "extremely offensive or provocative" contact to include such acts as "kissing without one's consent, cutting one's hair without consent, or spitting in one's face." *State v. Smiley*, 38 S.W.3d 521, 525 (Tenn. 2001). Additionally, "§ 39-13-101(a)(3) applies only to that physical contact which does not involve physical bodily injury." *Id.* While the definition does not include physical injury as an element of the completed offense, the relevant consideration under the

residual clause is whether the conduct "'presents a serious *potential risk* of physical injury,'" not whether the crime requires physical injury in order to be completed. *James*, 550 U.S. at 203 (emphasis added) (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). In this regard, this Court's prior decision in *United States v. Johnson*, 707 F.3d 655 (6th Cir. 2013), is instructive. In *Johnson*, the Court analyzed whether a conviction for first-degree stalking in Kentucky qualified as a violent felony. *Id.* at 658. The Court determined that first-degree stalking could be predicated on making a threat of sexual contact, with sexual contact including "'any touching of the sexual or other intimate parts of a person for the purpose of gratifying the sexual desire of either party.'" *Id.* at 662 (ellipsis omitted) (quoting Ky. Rev. Stat. Ann. § 510.010(7)). The Court noted "the slightest touch to a sexual or intimate part of another" was covered under the statute. *Id.* However, the Court also explained that the statute required a "course of conduct," meaning two or more instances of similar behavior against a victim; thus, a person who commits first-degree stalking has committed such conduct at least twice. *Id.* at 664. Additionally, the statute at issue in *Johnson* required the violator to meet one of the following additional requirements: be subject to a protective order as to the victim, currently have a criminal complaint pending by the same victim, have pled guilty to certain crimes against the same victim within the past five years, or have committed the act of stalking with a deadly weapon. *Id.* at 659–60 (citing Ky. Rev. Stat. Ann. § 508.140). In light of both the "course of conduct" and protective order elements, the Court held that such circumstances created a situation where "even the most innocuous sexual contact could elicit an intensified response that might result in violent confrontation." *Id.* at 664. Accordingly, the Court held the crime of first-degree stalking under the relevant Kentucky statute was a violent felony. *Id.* at 665.

The statute at issue here encompasses analogous behaviors. While a violation could similarly be predicated on slight touch, such action would nonetheless have to be "extremely offensive and provocative" and have to occur in violation of a restraining order explicitly protecting the victim from such contact by the perpetrator. Additionally, while there is no explicit "course of conduct" requirement under Tenn. Code Ann. § 39-13-102(c), the fact that action must be taken in violation of some form of restraining order illustrates that there is prior underlying conduct from the perpetrator serving as the basis for the restraining order in the first instance.[4] Accordingly, violation of Tenn. Code Ann. § 39-13-102(c) premised upon "extremely offensive or provocative" contact assault presents a "serious potential risk of physical injury" based on our reasoning in *Johnson*.

Lastly, as violation of Tenn. Code Ann. § 39-13-102(c) may be based on attempt crimes, we address whether an attempt to cause bodily injury or attempt to assault presents a sufficient level of risk to qualify as a violent felony under the ACCA's residual clause. As the Supreme Court explained in *James*, attempt crimes are not excluded from the reach of the residual clause of the ACCA; instead, they are simply subject to the same analysis as completed crimes. 550 U.S. at 198–201. In fact, *James* explained that there may be certain crimes where an attempt actually involves a greater risk of physical injury than a completed crime, as a preventative, confrontational intervention by the police, a bystander, or the potential victim often results. *Id.*

---

[4] While not explicitly referenced in Tenn. Code Ann. § 39-13-102(c), the statutory framework for obtaining a restraining order in Tennessee further supports this contention. Under Tenn. Code Ann. § 36-3-605, in order to obtain a protection order, the person requesting the order must "prove[ an] allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence" in a hearing before a court. *See also Cable v. Clemmons*, 36 S.W.3d 39, 41–42 (Tenn. 2001) (explaining the general process for obtaining an order of protection). We recognize that the language of § 39-13-102(c) appears to encompass a range of court orders and other agreements broader than those provided by § 36-3-605. However, we are satisfied that, based on § 39-13-102(c)'s underlying requirement of some form of order or agreement prohibiting what is clearly already illegal conduct, in "the ordinary case" violation of this statute presents a heightened risk of violent confrontation based on past behavior, thus establishing a "serious potential risk of physical injury to another." *See James*, 550 U.S. at 208.

at 204. Additionally, the Supreme Court found salient whether the law at issue requires an "'overt act'" towards the completion of the crime, beyond "[m]ere preparation." *Id.* at 202 (quoting *Jones v. State*, 608 So.2d 797, 799 (Fla. 1992)).

Tennessee requires for attempt culpability "conduct [that] constitutes a substantial step toward the commission of the offense," Tenn. Code Ann. § 39-12-101(a)(3), which involves something more than preparation, albeit perhaps less than an "overt act," *see State v. Reeves*, 916 S.W.2d 909, 910–14 (Tenn. 1996); *see also* Tenn. Code Ann. § 39-12-101 Tennessee Sentencing Commission cmts. ("Subdivision (a)(3) provides that the point of attempt responsibility, *beyond mere preparation* but short of the completed offense, is reached when an individual's intentional acts constitute a 'substantial step toward the commission of the offense.'" (emphasis added)). In light of our analysis of the elements of § 39-13-102(c), and Tennessee's requirement that a "substantial step" be taken towards completion for attempt crimes, attempting to either (1) cause bodily injury or (2) assault a person under the additional circumstances required by § 39-13-102(c) presents a similar risk of physical injury as the completed crimes; thus, the risk of physical injury for violation of § 39-13-102(c) based on attempt is sufficiently similar to an enumerated offense under the ACCA.

As each potential form of violation of Tenn. Code Ann. § 39-13-102(c) presents a level of risk similar to an enumerated offense, namely burglary, we now analyze, to the extent it may be necessary, whether such violations involve "purposeful, violent, and aggressive" conduct.

### ii. "Purposeful, Violent, and Aggressive" Conduct

Where a crime has a "stringent *mens rea* requirement," such as requiring intentional or knowing conduct, the crime is generally sufficiently "purposeful." *Sykes*, 131 S. Ct. at 2275–76.

"Aggressive, violent acts are 'aimed at other persons or property where persons might be located and thereby injured.'" *Mitchell*, 743 F.3d at 1062 (quoting *Vanhook*, 640 F.3d at 714).

As to the purposeful requirement, it is clear that the statute at issue requires that the perpetrator commit the underlying conduct—cause or attempt to cause bodily harm, or assault or attempt to assault—either *knowingly* or *intentionally*. As this Court has repeatedly explained, "[a] fundamental canon of statutory construction is that when interpreting statutes, the language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of the language is clear." *United States v. Roth*, 628 F.3d 827, 833 (6th Cir. 2011) (internal quotation marks omitted). Despite Bell's protests to the contrary, the statute's language stating that the perpetrator must "intentionally or knowingly attempt[] to cause or cause[] bodily injury or commit[] or attempt[] to commit an assault," clearly presents a *mens rea* requirement of intentional or knowing for both causing bodily harm *and* committing assault. Additionally, Bell's argument that the statutory language of § 39-13-102(c) requiring an intentional or knowing crime may still encompass recklessness misreads applicable Tennessee law, which provides that "[w]hen recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly." Tenn. Code Ann. § 39-11-301(a)(2) (2006). As one Tennessee court explained: "The statutory scheme creates a hierarchy, and, while each of the four mental elements are unique, the lesser levels of culpability are included within the greater," thus, "[t]he state cannot prove that an offense was committed 'knowingly' without proving that it was committed 'recklessly.'" *State v. Crowe*, 914 S.W.2d 933, 937 (Tenn. Ct. Crim. App. 1995). However, under this statutory scheme—and as a general rule for *mens rea*—"[t]he converse . . . is not true. A 'reckless' act is not necessarily done 'knowingly.'" *Id.* at 937 n.2. Bell points to language in *Crowe* that explains Tennessee courts may properly

14

instruct a jury on "recklessness" where the defendant has been charged with a "knowing" violation. *Id.* at 937. However, in *Crowe*, the defendant conceded that he had been charged under a section of the aggravated assault statute that provides for culpability based on intentional, knowing, or reckless conduct, and his objection to the jury instruction arose solely because the language of the indictment against him used only the word "knowingly," and thus, he unsuccessfully argued, he was only on notice to prepare a defense against knowing conduct. *Id.* at 936. Therefore, while knowing or intentional conduct will always suffice to prove recklessness, it does not follow, as Bell argues, that proving an act was committed recklessly suffices to prove it was committed knowingly or intentionally. Accordingly, as Tenn. Code Ann. § 39-13-102(c) contains a "stringent *mens rea* requirement" of knowing or intentional action, the conduct covered is sufficiently "purposeful" to constitute a violent felony. *See Sykes*, 131 S. Ct. at 2275–76.

With regard to aggressiveness and violence, to the extent they are still required after *Sykes*, violations of Tenn. Code Ann. § 39-13-102(c) are also violent and aggressive. Any violation of § 39-13-102(c) must be necessarily be "aimed at" a specific person or persons, such that the "crime . . . occurs not only where a person *might* be located, but where the presence of another is assured with absolute certainty." *See Mitchell*, 743 F.3d at 1062 (internal quotation marks and brackets omitted) (emphasis added). Further, as we have explained above in our analysis of level of risk, all violations of § 39-13-102(c) will involve conduct that may "thereby injure[]" another person. *See id.* Accordingly, aggravated assault under Tenn. Code Ann. § 39-13-102(c) requires sufficiently "violent" and "aggressive" conduct to constitute a violent felony.

**CONCLUSION**

In conclusion, because the crime of aggravated assault under Tenn. Code Ann. § 39-13-102(c) categorically presents a "serious potential risk of physical injury to another" that is "roughly similar, in kind as well as in degree posed" to the enumerated offenses, *Begay*, 553 U.S. at 142–43, violations of Tenn. Code Ann. § 39-13-102(c) are categorically violent felonies under the ACCA. Accordingly, the sentence imposed by the district court is **AFFIRMED**.