FILED
04/05/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 11, 2017 Session

## WENDELL GUINN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 12-05110     J. Robert Carter, Jr., Judge**

_____

### No. W2016-02152-CCA-R3-PC

_____

The Petitioner, Wendell Guinn, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief.  The Petitioner contends (1) that his constitutional rights were violated by prosecutorial misconduct during the jury voir dire and the State's closing arguments; (2) that the trial court committed several errors in the jury instructions; and (3) that he received ineffective assistance from his trial and appellate counsel.[1]  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  NORMA MCGEE OGLE, J., concurring in results only.

Valentine Darker, Memphis, Tennessee, for the appellant, Wendell Guinn.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Carrie Shelton Bush and Leslie Fouche, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTUAL BACKGROUND

_____

[1] For the sake of clarity, we have reordered and renumbered the issues from the order they appeared in the Petitioner's brief.

# I. Procedural History

In 2012, the Petitioner was indicted on charges of aggravated kidnapping, rape, aggravated burglary, and domestic assault. State v. Wendell Guinn, No. W2013-01436-CCA-R3-CD, 2014 WL 3513000, at *1 (Tenn. Crim. App. July 15, 2014), perm. app. denied (Tenn. Dec. 18, 2014). The Petitioner was tried by a jury in February 2013. The State dismissed the domestic assault charge during the trial, and the jury acquitted the Petitioner of the aggravated kidnapping and aggravated burglary charges. Id. The jury convicted the Petitioner of rape, and the trial court imposed a nine-year sentence. Id.

This court affirmed the Petitioner's conviction on direct appeal. Guinn, 2014 WL 351300, at *1. On December 18, 2014, our supreme court declined to review that decision. On December 18, 2015, the Petitioner, through counsel, filed a timely petition for post-conviction relief. An amended petition was subsequently filed on the Petitioner's behalf.

The petitions alleged that the trial court erred in its instruction on the applicable mental element for the rape charge, in its instruction on the aggravated burglary charge, and in issuing a supplemental jury instruction. The petitions also alleged that the prosecutor improperly commented on his decision not to testify at trial. Finally, the petitions alleged trial counsel was ineffective for failing to properly investigate the facts of the case and for failing to properly address the jury instruction and prosecutorial misconduct issues. Following an evidentiary hearing, the post-conviction court entered a written order denying the petition on September 23, 2016.

# II. Trial Facts

The victim testified at trial that she had been involved with the Petitioner in a lengthy extramarital affair. Guinn, 2014 WL 351300, at *2. The victim further testified that she had "'tried to end'" the relationship because the Petitioner would not leave his wife. Id. According to the victim, the Petitioner repeatedly called her on the morning of March 19, 2012, to ask her to help him post flyers about some missing property. Id. The victim testified that she did not initiate the phone calls and that she never invited the Petitioner to her house that morning. Id.

According to the victim, the Petitioner then showed up in her driveway and aggressively came up to her "'with his hands towards [her].'" Guinn, 2014 WL 351300, at *2 (alteration in original). The victim told the Petitioner that she did not "'have time to wrestle and tussle with'" him, and the Petitioner responded that the victim was "going to take care of this first." Id. The victim took this to mean that the Petitioner wanted her "'to take care of [his] sexual needs.'" Id. (alteration in original).

The victim testified that the Petitioner then "'backed [her] up into'" a bedroom inside the house and "'locked the door.'" Guinn, 2014 WL 351300, at *2-3 (alteration in original). Once in the bedroom, the victim and the Petitioner began "'tussling'" and "'pushing'" each other. Id. at *3. The Petitioner told the victim that she was going to give him "'this p---y today.'" Id. The victim testified that she told the Petitioner that "it was 'not going to happen'" because her granddaughter was in the house. Id. According to the victim, the Petitioner responded that he did not care because all of her grandchildren "knew he was 'f--king their grandmamma.'" Id.

The victim testified that the Petitioner unlocked the door to the bedroom so she could talk to her granddaughter. Guinn, 2014 WL 351300, at *3. The victim and her granddaughter then unsuccessfully attempted to "'get rid of'" the Petitioner. Id. When the victim returned to the bedroom, the Petitioner "'slammed the door and locked it'" telling the victim that she was "'going to give [him] this p---y today.'" Id. The Petitioner then "'started wrestling'" with the victim and trying to take off her clothes. Id. The Petitioner was able to remove the victim's underwear and penetrated her vagina with his fingers despite the victim's telling him not to do so. Id.

The victim testified that while the Petitioner attacked her, she screamed for her granddaughter to call the police. Guinn, 2014 WL 351300, at *3. A short time later, police officers arrived at the victim's house and arrested the Petitioner. Id. at *1, 4. At trial, the officers described the victim as appearing "'kind of disheveled'" and that she "seemed distraught and upset." Id. at *1. The officers found the Petitioner's "coat, underwear, and some flyers with the [Petitioner's] name and phone number on the floor of the bedroom." Id.

At trial, the victim's granddaughter corroborated the victim's testimony about attempting to get the Petitioner to leave and the victim's screaming. Guinn, 2014 WL 351300, at *1-2. The victim's granddaughter testified that "it was unusual for the victim to yell like that," that the victim "sounded scared," and that the victim told her that the Petitioner was "'trying to rape [her].'" Id. at *2.

The Petitioner gave a statement to the police that was introduced into evidence at trial. Guinn, 2014 WL 351300, at *4. In the statement, the Petitioner admitted to penetrating the victim's vagina with his fingers. Id. The Petitioner also stated that he went to the victim's house "to 'get her to help [him] distribute some flyers.'" Id. (alteration in original). However, the Petitioner claimed that the victim had consented to the digital penetration. Id. The Petitioner also claimed that the victim had "'called out for [her granddaughter] previously during sex'" and that the victim was joking when she told her granddaughter to call the police. Id. (alteration in the original).

-3-

### III. Post-Conviction Hearing

Several of the Petitioner's former coworkers testified that they were aware that the Petitioner was having an extramarital affair and that a woman would often visit the Petitioner while he was at work. These visits occurred up to the time of the Petitioner's arrest. One of the Petitioner's coworkers, Erin Kelly, recalled discussing with the Petitioner "four or five months" before the Petitioner's arrest the fact that the Petitioner was considering ending the affair. However, none of the Petitioner's coworkers ever spoke to the woman or knew her name.

Ted Scott, a forensic computer examiner with Verity Digital Forensics, testified that he was asked to examine an iPhone provided by the Petitioner's attorney. Mr. Scott testified that the iPhone was passcode protected and that none of the codes given to him by the Petitioner worked. Mr. Scott was unable to access the phone or determine to whom the phone had belonged.

Assistant District Attorney General Karen Cook testified that she was the lead prosecutor in the Petitioner's case. General Cook testified that an iPhone had been seized during the police investigation. General Cook also testified that she routinely mentions during jury voir dire that the defendant has the right not to testify and that the defendant just has to "show up and shut up." General Cook explained that she does this to ensure that potential jurors understand that the burden of proof is on the State and that they will not be biased against the defendant if he chooses not to testify. General Cook also testified that she used the Petitioner's perceived arrogance as a theme during her closing argument.

Trial counsel testified that the theory of defense at trial was that the victim consented to the penetration due to the lengthy sexual relationship between the victim and the Petitioner. Trial counsel explained that he did not look for witnesses to testify about the Petitioner's relationship with the victim because their relationship was not in dispute. Likewise, trial counsel did not think that evidence that the victim was still seeing the Petitioner around the time of the rape would have been helpful because there was not "any dispute on whether she would contact" the Petitioner.

Trial counsel further explained that the trial was focused on the issue of consent because there was no dispute about the fact that the Petitioner had penetrated the victim's vagina with his fingers. To that end, trial counsel admitted that he did not attempt to examine the iPhone seized by the police or call "character witnesses" at the trial. Trial counsel explained that there was a risk of discovering unfavorable evidence during a search of the iPhone and that he did not believe that anything on the iPhone would have been "crucial" or "helpful" to the Petitioner's defense theory. Trial counsel testified that he called "character witnesses" at the sentencing hearing rather than the trial because he

was afraid of the possible impeachment material that could have been presented if he called those witnesses at trial.

With respect to the Petitioner's decision not to testify, trial counsel testified that the Petitioner's statement to the police supported their defense theory. Trial counsel further testified that using the statement instead of having the Petitioner testify at trial avoided the danger of opening the door to unflattering information about the Petitioner, such as issues in other relationships or work disciplinary issues. With respect to the jury voir dire, trial counsel testified that it was not unusual for prosecutors to refer to a defendant's right to remain silent during voir dire. Trial counsel admitted that he did not notice that the indictment stated that the Petitioner had committed the rape intentionally while the jury instruction stated the Petitioner acted "either intentionally, knowingly, or recklessly."

Appellate counsel testified that he was a member of the same law firm as trial counsel and that he consulted with trial counsel about the Petitioner's case prior to the appeal. Appellate counsel recalled having a discussion with trial counsel during the jury deliberations about how the trial court had handled a question from the jury. However, appellate counsel recalled that he and trial counsel were not "very concerned about" the procedure the trial court used to answer the question.

Appellate counsel explained that they "didn't really have a big problem with the [supplemental] instruction that was given." Therefore, appellate counsel did not "put a lot into that argument" on appeal and "didn't focus on any of the procedural aspects of it." Appellate counsel admitted that the jury returned its verdict a short time after it received the trial court's supplemental instruction. However, appellate counsel testified that, in his experience, it was "not that unusual" for a jury to return a verdict shortly after receiving a supplemental instruction. Appellate counsel further testified that he did not believe that the supplemental jury instruction was the reason for the jury's verdict. Appellate counsel reiterated that he did not think the supplemental jury instruction was "that big of an issue in this case."

Appellate counsel testified that he did not believe there were any issues that should have been raised on appeal that were not. Specifically, appellate counsel testified that he did not think the prosecutor's statements during the jury voir dire or her use of the term "arrogant" during closing arguments should have been raised on appeal. Appellate counsel admitted that he did not think about the fact that the indictment had said the rape was committed intentionally when he was preparing the appellate brief.

The Petitioner testified that he told trial counsel that he "had contemplated ending" his relationship with the victim around the time of the rape and that his wanting to end the relationship "was very much the basis of what happened." The Petitioner claimed

that a few days before the rape, he and the victim had agreed to break up. However, the Petitioner admitted that there was no mention of his having broken up with the victim in the statement he gave to the police. The Petitioner claimed that the victim repeatedly called and sent him text messages asking him to come to her house on the day of the rape. According to the Petitioner, he eventually agreed to go to the victim's house and told her about the flyers for his missing property. The Petitioner claimed that the victim asked him to bring the flyers with him.

The Petitioner also claimed that he routinely had sex with the victim while her children and grandchildren were in the house. According to the Petitioner, the victim had asked him to install a lock on her bedroom door because her children and grandchildren had routinely walked in on the two of them having sex. The Petitioner further claimed that the victim had previously made a joke about calling the police when one of her grandchildren tried to open the locked bedroom door. The Petitioner testified that he talked to trial counsel about calling his coworkers as witnesses at trial because "they knew that [the victim] was around [him] all the time." The Petitioner also testified that his phone had been seized by the police and that he told trial counsel that there were text messages and phone calls from the victim on the phone.

The Petitioner claimed that he only once discussed testifying at trial with trial counsel. According to the Petitioner, trial counsel originally said that he would be a good witness, and he went to trial thinking that he would testify. However, the Petitioner claimed that trial counsel did not prepare him to testify and that they only talked about the decision briefly during the trial. According to the Petitioner, co-counsel "got right up in [his] face" and asked him a question during a break in the trial. The Petitioner claimed that when he smiled in response to the question, trial counsel told him that he could not testify because the jury would think he was arrogant.

## IV. Post-Conviction Court's Order

The post-conviction court concluded that the prosecutor's statements during the jury voir dire about a defendant's right to remain silent were "simply a correct statement of the law" and not a specific reference to the Petitioner because the Petitioner's decision whether to testify at trial "had not yet been made" at that point. The post-conviction court also found that trial and appellate counsel were not ineffective for failing to challenge the prosecutor's description of the Petitioner as arrogant during closing arguments and accredited trial counsel's testimony that he did not find those statements to be objectionable.

The post-conviction court concluded that the trial court did not err when it provided a supplemental jury instruction in response to a question from the jury. The

post-conviction court also found that there was no error in the trial court's jury instruction that rape could be committed intentionally, knowingly, or recklessly.

The post-conviction court also concluded that trial counsel was not ineffective for failing to call the Petitioner's coworkers as witnesses at trial and failing to search the Petitioner's cell phone. The post-conviction court found that this evidence would have "failed to add anything of value to the defense." The post-conviction court further concluded, as a general matter, that the Petitioner had failed to prove that trial and appellate counsel were deficient in their representation of the Petitioner.

## ANALYSIS

### I. Post-Conviction Standard of Review

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. However, absent limited exceptions not applicable to this case, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. § 40-30-106(g).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

### II. Prosecutorial Misconduct

The Petitioner contends that his constitutional rights were violated by prosecutorial misconduct during the jury voir dire and the State's closing arguments. The Petitioner argues that the prosecutor improperly commented on his decision not to testify at trial when she told the potential jury members that the Petitioner had the right to remain silent, that "all he has to do is show up and shut up," and that the Petitioner and his attorneys did not "have to say a word." The Petitioner also argues that the prosecutor improperly commented on the Petitioner's decision not to testify when she stated during

her closing argument that the "only evidence" that the victim consented to the penetration was the Petitioner's statement. The Petitioner further argues that the repeated characterization of the Petitioner as "arrogant" during the State's closing argument was misconduct. The State responds that none of these statements rose to the level of prosecutorial misconduct.

At the outset, we note that the Petitioner has waived these claims of prosecutorial misconduct by not raising them in his direct appeal. See Tenn. Code Ann. § 40-30-106(g). However, the issues in this section and the next are at times discussed in the brief as if they stand alone and at other times as if they are being raised in the context of an ineffective assistance of counsel claim. We will address these issues on the merits, waiver notwithstanding, because they will later be discussed in addressing the Petitioner's claims of ineffective assistance of trial and appellate counsel.

### A. Jury Voir Dire Comments

The purpose of jury voir dire is to advise the attorneys of the potential jurors' qualifications, interests, and biases. State v. Onidas, 635 S.W.2d 516, 517 (Tenn. 1982) (quoting Smith v. State, 327 S.W.2d 308, 318 (Tenn. 1959)). To that end, the attorneys may ask jurors questions designed to "indicate [the potential jurors'] freedom from bias." Id. (internal quotation marks omitted) (quoting Smith, 327 S.W.2d at 318).

The prosecutor's condescending choice of words, she was inquiring if any of the potential jurors would be biased against the Petitioner if he did not testify at trial. Furthermore, our review of the record revealed that the trial court properly instructed the jury on the burden of proof and the Petitioner's right not to testify at trial. See State v. Justin E. Kite, No. 03C01-9112-CR-380, 1992 WL 124455, at *2 (Tenn. Crim. App. June 10, 1992) (holding that the prosecutor's comment that the defendant would get "an opportunity to put on whatever evidence he might want to" was not a comment upon his right not to testify and, even if it were, was cured by the trial court's instruction on the defendant's right not to testify). Accordingly, we conclude that this issue is without merit.

### B. "Only Evidence" Comment

The purpose of closing arguments "is to sharpen and to clarify the issues," and this is accomplished "by enabling the opposing lawyers to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." State v. Banks, 271 S.W.3d 90, 130 (Tenn. 2008). However, direct comment upon or indirect reference to "a defendant's exercise of the state and federal constitutional right not to testify should be considered off limits to any conscientious prosecutor." State v. Jackson, 444 S.W.3d 554, 587, 590 (Tenn. 2014). Here, the prosecutor stated that the victim "told [the jury]

-8-

she said no" and that "the only evidence that was put in was the [Petitioner's] statement that indicates that maybe [he] thought that there was a yes."

Based upon our review of the record, we do not believe that the prosecutor's manifest intent was to comment on the Petitioner's right not to testify or that the remark "was of such a character that the jury would necessarily have taken it to be a comment on the [Petitioner's] failure to testify." Jackson, 444 S.W.3d at 588. The prosecutor was not asserting the absence of contradicting evidence that only the Petitioner could provide. See State v. Colvett, 481 S.W.3d 172, 208 (Tenn. Crim. App. 2014). Rather, General Cook was comparing the strengths of the State's evidence against the weaknesses in the Petitioner's statement. Accordingly, we conclude that this issue is without merit.

### C. "Arrogant" Comments

Prosecutors cannot use epitaphs to characterize a defendant. State v. Thomas, 158 S.W.3d 361, 414 (Tenn. 2005). However, comments on a defendant's demeanor that do not otherwise manipulate or misstate the evidence or implicate other rights of the defendant are not improper. State v. Hawkins, 519 S.W.3d 1, 49 (Tenn. 2017) (quoting Thomas, 158 S.W.3d at 414). Here, the police officer who took the Petitioner's statement characterized the Petitioner as being "arrogant" while he gave his statement. The prosecutor referred to the Petitioner as arrogant during closing arguments, especially during her rebuttal argument. Based upon our review of the record, we do not believe that this argument was improper. See Hawkins, 519 S.W.3d at 49 n.16 (concluding that the prosecutor's referring to the defendant as "mean" was a "strong but fair comment based on the proof" and not an improper argument).

### III. Jury Instructions

The Petitioner contends that the trial court committed several errors in the jury instructions. The Petitioner argues that the trial court erred when it issued a supplemental instruction in response to a question from the jury without adding that the jury should not place undue emphasis on the supplemental instruction. The Petitioner also argues that the trial court erred by instructing the jury that the rape could have been committed intentionally, knowingly, or recklessly when the indictment specifically alleged that the rape had been intentionally committed. The Petitioner further argues that the trial court erred in instructing the jury on aggravated burglary because that instruction stated that the jury had to find that the Petitioner entered the victim's home with the intent to commit an assault despite the fact that the domestic assault charge had been dismissed.[2] The State

---

[2] This issue is listed as "Denial of a Judgment of Acquittal on Aggravated Burglary" in the Petitioner's brief, and the Petitioner also references the fact that assault was listed as a lesser-included offense of rape in the jury instructions.

responds that there was no error in the trial court's jury instructions. We will address these issues as we did the prosecutorial misconduct issues wavier notwithstanding.

## A. Supplemental Instruction

On direct appeal, a panel of this court noted that the better practice "for a trial court responding to a jury question is to 'bring the jurors back into open court, read the supplemental instruction, . . . along with a supplemental instruction emphasizing that the jury should not place undue emphasis on the supplemental instruction,'" but that the trial court had "simply sent a note back to the jury with its supplemental instruction." Guinn, 2014 WL 3513000, at *8 (alteration in original). Absent this procedural lapse, the panel found no error with the trial court's supplemental instruction. Id. The Petitioner now argues that the failure of the trial court to instruct the jury not to place undue emphasis on the supplemental instruction "triggered" the jury's verdict.

However, this court has previously held that the failure to admonish the jury not to place undue emphasis on a supplemental instruction was not reversible error when the trial court's original instructions to the jury contained an instruction that the jury should not place any importance on the order in which the instructions were given or single out an instruction as more important than the others. State v. Chance, 778 S.W.2d 457, 461-62 (Tenn. Crim. App. 1989). The trial court gave such an instruction to the jury in this case. Accordingly, we conclude that this issue is without merit.

## B. Applicable Mental Element

The Petitioner contends that because he was indicted for having intentionally committed the rape, the jury should not have been charged that the offense could have been committed knowingly or recklessly. However, "in the hierarchy established by the legislature, 'recklessness' is a lesser level of mental state that is embraced by both 'intentional' and 'knowing.'" State v. Crowe, 914 S.W.2d 933, 937 (Tenn. Crim. App. 1995). This means that the State "cannot prove that an offense was committed ['intentionally'] without proving that it was committed 'recklessly.'" Id. When an indictment charges that a crime has been committed intentionally "the defendant is on notice that ['knowing' and] 'recklessness' [are] contained within the statutory definition." Id. As such, "a jury instruction containing the mental element[s] of ['knowing' and] 'reckless' is certainly not erroneous" when a defendant is charged with an intentional offense. Id. Accordingly, we conclude that this issue is without merit.

## C. Aggravated Burglary Instruction

The Petitioner argues that the trial court erred in instructing the jury on aggravated burglary because that instruction stated that the jury had to find that the Petitioner entered

-10-

the victim's home with the intent to commit an assault despite the fact that the domestic assault charge had been dismissed. Any challenge to the trial court's aggravated burglary instruction is moot as the Petitioner was acquitted of that offense. See State v. Rodgers, 235 S.W.3d 92, 97 (Tenn. 2007) (discussing the doctrine of mootness). The Petitioner's brief also argues that the inclusion of assault as a lesser-included offense of rape in the jury instructions violated his constitutional protections against double jeopardy. However, the conduct at issue for the rape charge, the penetration of the victim's vagina by the Petitioner, was separate from the conduct at issue in the domestic assault charge, the "wrestling" with the victim that preceded the rape. Accordingly, we conclude that this issue is devoid of merit.

### IV. Ineffective Assistance of Trial and Appellate Counsel

The Petitioner contends that he received ineffective assistance from his trial and appellate counsel. The Petitioner argues that trial counsel failed to properly investigate his relationship with the victim by failing to interview his coworkers and failing to search his cell phone. The Petitioner also argues that trial and appellate counsel were ineffective in their handling of the prosecutorial misconduct and jury instruction issues discussed above. The State responds that the Petitioner failed to establish that trial and appellate counsel were deficient in their representation of the Petitioner.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In reviewing a trial counsel's conduct, we make every effort to "'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Strickland, 466 U.S. at 689).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency." Felts, 354 S.W.3d at 277 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)). Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Because a petitioner must establish both prongs of the test,

-11-

a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In determining whether appellate counsel's failure to raise an issue on appeal constitutes ineffective assistance of counsel, our supreme court has held that "unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." Carpenter v. State, 126 S.W.3d 879, 887-88 (citing United States v. Dixon, 1 F.3d 1080, 1083 (10th Cir. 1993)). "Generally, the determination of which issues to present on appeal is a matter which addresses itself to the professional judgment and sound discretion of appellate counsel" as these are "tactical and strategic choices," which should not be second-guessed. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993).

There was no dispute that the Petitioner and the victim had been engaged in a lengthy relationship prior to the rape, and there was no dispute that the Petitioner digitally penetrated the victim. The sole issue at trial was whether the victim had consented to the penetration. None of the witnesses presented at the post-conviction hearing were present on the day of the rape. In fact, none of the witnesses had ever met the victim or knew her name. The witnesses testified that the victim frequently visited the Petitioner at his workplace, and one of them testified that the Petitioner had discussed ending the relationship with the victim.

This evidence had little to no relevance on the issue of consent, especially in light of the fact that the victim's testimony was corroborated by her granddaughter's testimony, that flyers with the Petitioner's name and phone number were found in the victim's bedroom, and that the Petitioner made no mention of having broken up with the victim in his statement to the police. Likewise, the issue of whether the victim or the Petitioner had called the other first that day had little, if any, relevance as to the issue of consent. Trial counsel testified that he was afraid of exposing the Petitioner to unflattering or inculpatory evidence if he searched the Petitioner's cell phone or called "character witnesses" at trial. Accordingly, we conclude that trial counsel was not deficient for failing to investigate this evidence or utilize it at trial.

With respect to the Petitioner's remaining claims of ineffective assistance of trial and appellate counsel, having concluded that the Petitioner's prosecutorial misconduct and jury instruction issues were without merit, we now conclude that trial and appellate counsel were not deficient in their handling of those issues. Accordingly, we affirm the post-conviction court's order denying the Petitioner's petition for post-conviction relief.

**CONCLUSION**

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE